# United States Court of Appeals
## For the First Circuit

No. 06-1246

AMY PALMER,

Plaintiff, Appellant,

v.

CHAMPION MORTGAGE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Selya, Circuit Judge,
Siler,** Senior Circuit Judge,
and Howard, Circuit Judge.

Christopher M. Lefebvre, with whom Family and Consumer Law Center was on brief, for appellant.
W. Scott O'Connell, with whom Paul M. Lanagan and Nixon Peabody LLP were on brief, for appellee.

September 29, 2006

---

*Of the Sixth Circuit, sitting by designation.

**SELYA**, **Circuit Judge**.  This case requires us to determine whether a consumer's professed lack of comprehension of a notice of right to rescind alone suffices to pave the way for belated rescission under the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667.  The district court concluded that a bald assertion of subjective confusion did not trump the plain language of the disputed notice and dismissed the plaintiff's amended complaint. The court then rebuffed the plaintiff's two-pronged endeavor either to obtain reconsideration or to restate her claim.  This appeal followed.  After careful consideration, we affirm.

## I.  BACKGROUND

Because this appeal follows the granting of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), we rehearse the facts as set forth in the plaintiff's amended complaint.  See Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987).  Consistent with the case law, however, we eschew reliance on the pleader's rhetorical flourishes, including unsupported conclusions and assertions.  See id.; see also Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5-6 (1st Cir. 2005).

In March of 2003, plaintiff-appellant Amy Palmer obtained a debt-consolidation loan, secured by a mortgage on her residence, from defendant-appellee Champion Mortgage.  The closing took place on March 28, 2003.  The plaintiff executed, then and there, a promissory note, a mortgage, a TILA statement, and a settlement

sheet.  She left without receiving copies of any of these documents.

Several days later, the plaintiff received by mail copies of the closing documents.  Included among these papers was a notice of right to cancel (the Notice) — a notification required by the TILA.  See 15 U.S.C. § 1635(a).  In relevant part, the Notice informed the plaintiff that:

> You have a legal right under federal law to cancel this transaction, without cost, within three (3) business days from whichever of the following events occurs last:
>
> (1) the date of the transaction, which is MARCH 28, 2003; or (date)
> (2) the date you received your Truth-in-Lending disclosures; or
> (3) the date you received this notice of your right to cancel.

The Notice further provided: "If you cancel by mail or telegram, you must send the notice no later than midnight of APRIL 01, 2003 (or midnight of the third business day following the latest of the three (3) events listed above)."

Although the plaintiff cannot remember the specific date on which she received the documents, she alleges — and for present purposes we accept — that they arrived in early April of 2003, but after April 1.  At any rate, nothing happened for well over a year.  Then, on or about August 6, 2004, the plaintiff notified Champion of her intent to rescind the transaction.

When Champion failed to respond to the plaintiff's importunings, she sued in federal district court. Her complaint alleged that the inclusion of the April 1 deadline was confusing and that, therefore, she retained the right to rescind the transaction under 15 U.S.C. § 1635, which provides for an extended three-year rescission period when a creditor fails to make one or more material disclosures required under the TILA.

After some procedural skirmishing, not relevant here, the plaintiff served an amended complaint. In tandem with the section 1635 claim, the amended complaint asserted that a right to rescind the transaction also existed under the TILA's state-law counterpart, Mass. Gen. Laws ch. 140D, § 32. Champion moved to dismiss on the ground that the amended complaint failed to state a cognizable claim. See Fed. R. Civ. P. 12 (b)(6). The lower court allowed this motion, concluding that "[t]he Notice the plaintiff received clearly and conspicuously advised her of her right to cancel the transaction within three business days from the last to occur of three events, one of which was the date she received the notice of right to cancel." Thus, the court reasoned, the plaintiff had received the full complement of disclosures stipulated by the TILA and her belated attempt to rescind the transaction was time-barred.[2]

_____

[2]Relatedly, the district court ruled that no claim inhered under the Massachusetts statute invoked by the plaintiff, because that statute was preempted by the TILA. Since the plaintiff does

-4-

Undaunted, the plaintiff moved for reconsideration, see Fed. R. Civ. P. 59(e), or in the alternative, for leave to file a second amended complaint, see Fed. R. Civ. P. 15(a). The district court denied both entreaties. In refusing leave to amend, the court emphasized that the complaint had already been amended once and that the motion to dismiss had been pending for several months before the court disposed of it. This timely appeal followed.

## II. ANALYSIS

On appeal, the plaintiff contests the district court's allowance of Champion's motion to dismiss, as well as the denial of her requests for reconsideration and for leave to file a second amended complaint.[3] We discuss these claims of error sequentially.

### A. The Motion to Dismiss.

We review dismissals for failure to state a claim de novo, accepting all well-pleaded facts as true and giving the party who has pleaded the contested claim the benefit of all reasonable inferences. See Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Thus, our primary task here is to determine whether, viewing the

---

not challenge this ruling on appeal, we make no further mention of the state-law claim.

[3]In her brief, the plaintiff directs our attention to the incorrect termination of the case one day prior to the actual entry of judgment, in violation of Fed. R. Civ. P. 58(a)(1). We acknowledge that this technical bevue occurred, but in the circumstances of this case any error was patently harmless. The plaintiff is not, therefore, entitled to relief on this account. See Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 30 (1st Cir. 2004).

-5-

facts in the light most flattering to the plaintiff, she articulated an actionable TILA claim.

We begin this inquiry with a synopsis of the relevant portions of the federal statute. Congress enacted the TILA in 1968 "to assure a meaningful disclosure of credit terms" and "to protect the consumer against inaccurate and unfair credit . . . practices." 15 U.S.C. § 1601(a). To this end, the TILA requires creditors to disclose clearly and accurately all the material terms of a credit transaction. See Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998).

With respect to non-purchase-money mortgages on residential dwellings — the type of credit transaction at issue here — the TILA confers upon the debtor a right to rescind within three days of the transaction's consummation or three days from delivery of the material disclosures, whichever occurs later.[4] See 15 U.S.C. § 1635(a). The creditor also must clearly disclose this rescission right to the debtor. See 12 C.F.R. § 226.23(b)(1). Should a creditor fail to deliver any of the required material disclosures (including notice of the right to rescind), the debtor

_____

[4]It is unsettled whether Massachusetts citizens retain a rescission right under the TILA, given the statutory exemption granted to Massachusetts and the concomitant Federal Reserve regulations. See 15 U.S.C. § 1633; Belini v. Wash. Mut. Bank, 412 F.3d 17, 28 (1st Cir. 2005). Inasmuch as the plaintiff has failed to state a valid claim for rescission under the TILA, see text infra, it is unnecessary for us to resolve this thorny issue.

may rescind at any time up to three years following the consummation of the transaction. See id. § 226.23(a)(3). If a creditor does not respond to a rescission request within twenty days, the debtor may file suit in federal court to enforce the rescission right. See Belini v. Wash. Mut. Bank, 412 F.3d 17, 20 (1st Cir. 2005); see also 15 U.S.C. § 1635(b).

We move now from the general to the particular. The plaintiff in this case concedes that she received copies of all the material disclosures mandated under the TILA but alleges that the Notice was "defective" and "confusing." She points specifically to the inclusion of a date-certain deadline for rescission (April 1, 2003) and complains that the designated date already had passed by the time she received the Notice. Relying on our admonition that "a misleading disclosure is as much a violation of TILA as a failure to disclose at all," Barnes v. Fleet Nat'l Bank, 370 F.3d 164, 174 (1st Cir. 2004) (quoting Smith v. Chapman, 614 F.2d 968, 977 (5th Cir. 1980)), she asseverates that the confusing nature of the Notice triggered the extended three-year rescission period.

Champion readily concedes, as it must, that the Notice included an April 1 deadline for rescission. But it hastens to add that the Notice twice indicated in plain language that, in the alternative, the debtor had three business days after receipt of the Notice within which to rescind. To strengthen its argument, Champion observes that the Notice is identical in all material

-7-

respects to the model form authored by the Federal Reserve Board, and that other courts have found such adherence to be an impenetrable shield against TILA-based attacks. See, e.g., Gibson v. Bob Watson Chevrolet-Geo, Inc., 112 F.3d 283, 286 (7th Cir. 1997); Murphy v. Empire of Am., 583 F. Supp. 1563, 1566 (W.D.N.Y. 1984); see also In re Porter, 961 F.2d 1066, 1076 (3d Cir. 1992) (explaining that "use of an appropriate model form necessarily complies with the [TILA]" (emphasis omitted)). Based on the Notice's plain language and its adherence to the model form, Champion urges us to disregard the plaintiff's subjective state of mind and join the district court in holding the Notice adequate as a matter of law.

We find Champion's argument compelling. Although we are required to view the well-pleaded facts in the light most favorable to the plaintiff, we need not "swallow [her] invective hook, line, and sinker." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). As part and parcel of this approach, we must refrain from crediting her "bald assertions, unsupportable conclusions, and 'opprobrious epithets.'" Chongris, 811 F.2d at 37 (quoting Snowden v. Hughes, 321 U.S. 1, 10 (1944)); accord Aulson, 83 F.3d at 3. This methodology is particularly appropriate in the TILA context where we, like other courts, have focused the lens of our inquiry on the text of the disclosures themselves rather than on plaintiffs' descriptions of their subjective understandings. See, e.g.,

-8-

Barnes, 370 F.3d at 172-74 (examining the language of disputed disclosures in the face of plaintiff's claim that they were misleading); Zamarippa v. Cy's Car Sales, Inc., 674 F.2d 877, 879 (11th Cir. 1982) (noting that "it is unnecessary to inquire as to the subjective deception or misunderstanding of particular consumers" in determining whether a disclosure violates the TILA); Bustamante v. First Fed. Sav. & Loan Ass'n, 619 F.2d 360, 364 (5th Cir. 1980) (applying objective standard in evaluating TILA claim).

This emphasis on objective reasonableness, rather than subjective understanding, is also appropriate in light of the sound tenet that courts must evaluate the adequacy of TILA disclosures from the vantage point of a hypothetical average consumer — a consumer who is neither particularly sophisticated nor particularly dense. See Smith v. Cash Store Mgmt., Inc., 195 F.3d 325, 327-28 (7th Cir. 1999) (explaining that TILA disclosures should be viewed from the perspective of an ordinary consumer, not a federal judge); see also Edmondson v. Allen-Russell Ford, Inc., 577 F.2d 291, 296 (5th Cir. 1978) ("We must assess the adequacy of disclosure . . . by the audience for which disclosure was intended."). Thus, we turn to the question of whether the average consumer, looking at the Notice objectively, would find it confusing. We conclude that she would not.

The Notice itself is annexed to the amended complaint and, therefore, is deemed fair game on a motion to dismiss. See

-9-

Centro Medico del Turabo, 406 F.3d at 5; Rodi v. S. New Engl. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004); In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003). It clearly and conspicuously indicates that the debtor can rescind "within three (3) business days from whichever of [three enumerated] events occurs last." Although the Notice does state in part that rescission has to occur "no later than midnight of APRIL 01, 2003," the plaintiff wrests this statement from its contextual moorings. The statement is followed immediately by a parenthetical reading "(or midnight of the third business day following the latest of the three (3) events listed above)." We fail to see how any reasonably alert person — that is, the average consumer — reading the Notice would be drawn to the April 1 deadline without also grasping the twice-repeated alternative deadlines.

This facial transparency is bolstered by the fact that the language of the Notice closely tracks the language of the model form. This is, at the very least, prima facie evidence of the adequacy of the disclosure.[5] See 12 C.F.R. § 226 Supp. I, Intro. para. 1 ("Good faith compliance with [the Federal Reserve Board's]

---

[5]There is some statutory support for the proposition that adherence to a model form bars a TILA non-disclosure claim entirely. See 15 U.S.C. §§ 1604(b), 1635(h), 1640(f). There is also some case law to that effect. See, e.g., Bob Watson Chevrolet-Geo, 112 F.3d at 286; Murphy, 583 F. Supp. at 1566. The case at hand does not require that we go that far, and so we leave for another day the question of whether such adherence invariably brings a creditor within a safe harbor.

commentary affords protection from liability under [the TILA].").

Accordingly, we agree with the district court that the Notice was crystal clear and, thus, did not trigger an extended rescission right under the TILA.

If more were needed — and we doubt that it is — we note that accepting the plaintiff's argument might contravene the goals of the TILA. Holding all parties to the plain language of disclosures aids the due enforcement of the statutory requirements by ensuring that any consumer subject to a misleading disclosure may bring suit against the creditor. See Chapman, 614 F.2d at 971 (observing that "consumers who are aware of the true terms of a contract are more able to see that these terms are not clearly and conspicuously disclosed"). The flip side of the coin, of course, is that any creditor who uses plain and legally sufficient language ought to be held harmless. In other words, courts ought not to invent ambiguities that do not in fact exist.

The plaintiff attempts to circumvent this relatively straightforward analysis by citing a raft of cases in which notices of rescission rights were found wanting. In each of those cases, however, the notice was either given prior to the closing and phrased so that the rescission deadline expired before the loan closed, see, e.g., Jackson v. Grant, 890 F.2d 118, 122 (9th Cir. 1989); Basnight v. Diamond Developers, Inc., 146 F. Supp. 2d 754, 758 (M.D.N.C. 2001); In re Vickers, 275 B.R. 401, 404-05 (Bankr.

M.D. Fla. 2001), or stated only a single fixed rescission deadline that had elapsed prior to delivery of the notice, <u>see</u>, <u>e.g.</u>, <u>In re Bell</u>, 309 B.R. 139, 157 (Bankr. E.D. Pa. 2004), or stated no rescission deadline whatsoever, <u>see</u>, <u>e.g.</u>, <u>Semar</u> v. <u>Platte Valley Fed. Sav. & Loan Ass'n.</u>, 791 F.2d 699, 702 (9th Cir. 1986); <u>Reynolds</u> v. <u>D & N Bank</u>, 792 F. Supp. 1035, 1038 (E.D. Mich. 1992); <u>Johnson</u> v. <u>Thomas</u>, 794 N.E.2d 919, 931 (Ill. App. Ct. 2003). The Notice here does not suffer from any of these infirmities.

That ends this aspect of the matter. Because we find the Notice clear and adequate, and because the plaintiff otherwise concedes receiving all the required disclosures, her right of rescission under the TILA had long expired by the time she commenced this action. Accordingly, the district court did not err in dismissing the action on the ground that the plaintiff's TILA claim was time-barred.

### B.  **The Motion for Reconsideration**.

We need not linger long over the plaintiff's objection to the denial of her motion for reconsideration. The granting of a motion for reconsideration is "an extraordinary remedy which should be used sparingly." 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995). Unless the court has misapprehended some material fact or point of law, such a motion is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected. <u>See</u>

In re Sun Pipe Line Co., 831 F.2d 22, 24-25 (1st Cir. 1987). To obtain relief, the movant must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law. See Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005). The standard of appellate review is correspondingly deferential: we will not overturn the district court's denial of a motion for reconsideration absent an abuse of discretion. See Iverson v. City of Boston, 452 F.3d 94, 104 (1st Cir. 2006); In re Sun Pipe Line, 831 F.2d at 25.

Here, the plaintiff's motion for reconsideration did no more than reiterate the arguments she earlier had advanced, claiming somewhat counterintuitively that the district court had "overlooked" her allegation that the Notice was confusing. Since the court had not overlooked that allegation but, rather, had found it wanting, the motion was denied. We discern no hint of error.

## C. **The Request for Leave to Amend**.

As a last-ditch measure, the plaintiff contests the district court's refusal to allow her to file a second amended complaint. We review this ruling for abuse of discretion. James v. Watt, 716 F.2d 71, 77-78 (1st Cir. 1983). In conducting that review, we "will defer to the district court's hands-on judgment so long as the record evinces an adequate reason for the denial." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 58 (1st Cir. 2006).

-13-

In this instance, there is a temporal wrinkle: the plaintiff requested further leave to amend only _after_ the district court dismissed her first amended complaint.  If made subsequent to the entry of judgment, such requests, whatever their merit, cannot be allowed unless and until the judgment is vacated under, say, Fed. R. Civ. P. 60.  _See_ 6 Federal Practice and Procedure, _supra_, § 1489 (2d ed. 1990).  Here, no such vacation occurred.

We need not probe this point too deeply.  The record below is tenebrous as to timing, _see_ _supra_ note 2, and it is arguable that the plaintiff's request to amend antedated the formal entry of judgment.  But even if we assume for argument's sake that the vacation-of-judgment barrier does not pertain, that assumption would not salvage the plaintiff's cause.  In that event, the district court would have had to evaluate the plaintiff's request under the liberal standard of Fed. R. Civ. P. 15(a).  Even so, we nevertheless would uphold the district court's rejection of the request to amend.

Our analysis is as follows.  Amendments may be permitted pre-judgment, even after a dismissal for failure to state a claim, and leave to amend is "freely given when justice so requires." Fed. R. Civ. P. 15(a).  That is not to say, however, that a district court lacks authority to deny a request to amend.  In appropriate circumstances — undue delay, bad faith, futility, and the absence of due diligence on the movant's part are paradigmatic

-14-

examples — leave to amend may be denied.  See Foman v. Davis, 371 U.S. 178, 182 (1962).  In short, a request to amend — especially a belated request — requires the court to examine the totality of the circumstances and to exercise its informed discretion in constructing a balance of pertinent considerations.  See Quaker State Oil Ref. Corp. v. Garrity Oil Co., 884 F.2d 1510, 1517 (1st Cir. 1989).

On this occasion, the plaintiff made her request for leave to amend more than fifteen months after commencing her action and more than nine months after initially amending her complaint. Her proposed second amendment sought to assert a new theory based on the timing of Champion's disbursement of the loan proceeds. This is not an instance in which newly discovered evidence, not previously available, suddenly came to light; the plaintiff was aware of the factual predicate on which her new theory rested before she brought suit.  Considering the totality of the circumstances, we conclude that the district court had sufficient reason to reject the plaintiff's belated attempt to amend her complaint yet again.  Consequently, we find no abuse of the district court's wide discretion.

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we hold that, as a matter of law, the notice of right to cancel provided by Champion complied with the applicable TILA

-15-

requirements. The plaintiff's statutory right to rescind therefore expired three days after she received the Notice, and the district court did not err in dismissing her TILA claim as time-barred.  By like token, the district court did not abuse its discretion either in denying the plaintiff's motion for reconsideration or in refusing to grant her leave to file a second amended complaint.

**<u>Affirmed</u>**.